UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KYLA D. WILLIAMS,

        Plaintiff,

                                      Case No. 1:14-cv-79

v.

                                        Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Social Security Income (SSI).

        Plaintiff was born on December 30, 1992 (AR 46).[1]  On March 15, 2005, plaintiff's mother, Maria Miller, filed an application for SSI on plaintiff's behalf (AR 16, 46-48).  After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) held a hearing, reviewed plaintiff's claim *de novo*, and entered a decision denying the claim on August 25, 2008 (AR 13-25).  Plaintiff, through her mother, appealed the ALJ's decision to this Court.  *See Marion A. Miller, on behalf of K.W., a minor*, No. 1:09-cv-1105 (W.D. Mich.).  This Court reversed and remanded the matter pursuant to sentence four of 42 U.S.C. § 405(g), to allow the ALJ to re-evaluate whether plaintiff met the requirements of Listing 12.05 C (mental retardation).  *Id.* (Order Feb. 10, 2011) (docket no. 14).  On remand, an administrative hearing was held on September 22, 2011, at

_____

[1] Citations to the administrative record will be referenced as (AR "page #").

which time the ALJ heard testimony from plaintiff, her mother, a medical expert (ME), and a vocational expert (VE)  (AR 466-96).  The ALJ reviewed plaintiff's claim *de novo* and entered a decision denying the claim on October 25, 2011 (AR 283-98).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

2

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date."  *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).   Because plaintiff's application involves claims for SSI as both a child (an individual under the age of 18) and an adult (an individual having attained the age of 18), two separate standards apply to her claim.

### A.    Childhood standard of disability

An individual under the age of 18 shall be considered disabled if the child

> has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner engages in a three step process to determine whether a child is disabled under the Act:

> First, the child must not be engaged in substantial gainful activity; second, the child must have a severe impairment; and third, the severe impairment must meet, medically equal or functionally equal one of the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924.

*Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003).  *See also*, *Kelly v. Commissioner of Social Security*, 314 Fed. Appx. 827, 832 (6th Cir. 2009) (listing framework for a three-step inquiry).

The regulations provide separate tests for determinations made at step three of the process.  20 C.F.R. § 416.924(d).   First, "[i]n order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing. *See* 20 C.F.R. § 416.924(a)."

*Elam*, 348 F.3d at 125.  "It is insufficient that a claimant comes close to meeting the requirements of a listed impairment." *Id.*

Second, an impairment is determined to be "medically equivalent" to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

Third, an impairment may be functionally equivalent to a listed impairment. The criteria for determining functional equivalence to a listing is based upon six "domains" of functioning: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and, health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  To establish "functional equivalence" of a listed impairment, the claimant has to show either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).  A "marked limitation" in a domain is defined as a limitation which "interferes seriously with your ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).   An "extreme limitation" in a domain is defined as a limitation which "interferes very seriously with your ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

## B.    Adult standard of disability

In the case of an adult, a disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. § 416.905; *Abbott v. Sullivan*,

905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed

a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant work

through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

number of jobs in the economy that accommodate the claimant's residual functional capacity

(determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861

F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in

social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716,

719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.   ALJ'S DECISION

### A.   Childhood standard of disability

Following the three steps, the ALJ found that when plaintiff applied for benefits on March 15, 2005, she was in the "Adolescents (age 12 to attainment of age 18)" age group (AR 287). Plaintiff had not engaged in substantial gainful activity since filing her application (AR 288).  At step two, the ALJ found that, before attaining age 18, plaintiff had a severe impairment of cognitive disorder (AR 288).  At step three, the ALJ found that before attaining age 18, plaintiff did not have an impairment or combination of impairments that met or medically equaled, of functionally equaled, one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 289).  Specifically, the ALJ found: that plaintiff had "less than marked" limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for yourself; and that plaintiff had "no" limitations in moving about and manipulating objects, and in health and physical well being (AR 290-95).  Based on this review, the ALJ found that plaintiff did not have an impairment or combination of impairments that resulted in either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning (AR 295).  The ALJ concluded that because plaintiff did not have an impairment or combination of impairments that met, medically equaled any listing, or functionally equaled the listings, she was not disabled prior to attaining age 18 (AR 295).

### B.     Adult standard of disability

Plaintiff became an adult when she attained age 18 on December 29, 2010 (AR 287).

Plaintiff's claim for benefits as an adult failed at the fifth step.  At step one, the ALJ found that

plaintiff had not engaged in substantial gainful activity since filing her application (AR 288).   At

step two, the ALJ found that plaintiff has not developed any new impairment or impairments since

attaining age 18, but has continued to have a severe impairment (AR 295).   At step three, the ALJ

found that since attaining age 18, plaintiff has not had an impairment or combination of impairments

that meets or medically equals a listed impairment (AR 295).   Specifically, in following the Court's

order or remand, the ALJ found that plaintiff did not meet all of the required elements of Listing

12.05C (AR 295).

The ALJ decided at the fourth step that after attaining the age of 18, plaintiff had the

residual functional capacity (RFC):

> .  .  .  to perform a full range of work at all exertional levels but with the following
> nonexertional limitations: The claimant can only perform simple unskilled work with
> a specific vocational preparation (SVP) rating of 1 or 2 and is able to understand,
> remember and carry out only short, simple instructions.   She can perform work
> requiring only brief and superficial contact with the public, routine work that does not
> involve meeting production quotas or goals or keeping pace with coworkers, work
> that does not involve meeting production quotas or goals or keeping pace with
> co-workers [sic], and work that does not require taking initiative or making
> independent decisions.

(AR 296).   The ALJ further found that plaintiff has no past relevant work (AR 296).

At the fifth step, the ALJ found that plaintiff could perform a significant number of

unskilled jobs in the State of Michigan such as: dishwasher (8,431 jobs); cleaner (33,659 jobs at the

medium exertional level);  packer/packager (9,347 positions at the light exertional level); and

inspector/tester (5,809 jobs at the light exertional level) (AR 297).  Accordingly, the ALJ determined

7

that plaintiff has not been under a disability, as defined in the Social Security Act, since December

29, 2010, the date plaintiff attained age 18, through October 25, 2011 (the date of the decision) (AR

297-98).

### III. ANALYSIS

Plaintiff has raised two issues on appeal.

> **A.    The Commissioner erred in failing to adequately consider the mental impairments suffered by plaintiff, specifically, that the Commissioner failed to adequately consider the Listings of Impairments.**

Plaintiff contends that the ALJ did not adequately consider whether she met a listed

impairment as either a child or an adult.  A claimant bears the burden of demonstrating that he meets

or equals a listed impairment at the third step of the sequential evaluation.  *Evans v. Secretary of

Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987).  In order to be considered disabled

under the Listing of Impairments, "a claimant must establish that his condition either is permanent,

is expected to result in death, or is expected to last at least 12 months, as well as show that his

condition meets or equals one of the listed impairments."  *Id.*  An impairment satisfies the listing

only when it manifests the specific findings described in the medical criteria for that particular

impairment. 20 C.F.R. § 416.925(d).  A claimant does not satisfy a particular listing unless all of the

requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d

1078, 1083 (6th Cir.1987).  *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725,

728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must

present specific medical findings that satisfy the various tests listed in the description of the

applicable impairment or present medical evidence which describes how the impairment has such

8

equivalency").  If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 416.920(d).

### 1.    ALJ's findings

The ALJ found that plaintiff did not meet all required elements of Listing 112.05D (AR 289).  This listing applies to children and provides in pertinent part:

> Intellectual Disability: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.  . . .
>
> > D.    A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function[.]

20 CFR Pt. 404, Subpt. P, App. 1, Listing 112.05 D.[2]

The ALJ provided the following reasons in support of his finding:

> First, the legitimacy of the IQ scores in February 2005 [when plaintiff was 12 years old] (VIQ - 71, PIQ- 67 and FSIQ - 66) are drawn into question since higher scores were attained in more recent WISC-IV testing conducted in February 2008 [when plaintiff was 17 years old] (FSIQ -73, VIQ - 73 and PIQ - 75).  Morever, even assuming that earlier scores are found valid, record fails to establish existence of an "other" medical impairment imposing an additional and significant limitation of function.  Even assuming that claimant's learning disorder is found to constitute an "other mental impairment" that impairment would not be expected to impose limitations significantly different from those resulting from the claimant's cognitive disorder.

(AR 289).

---

[2] At the time the Court decided plaintiff's first appeal, she had reached age 18, and her counsel characterized the appropriate listing as 12.05.  *See Miller v. Commissioner*, No. 1:09-cv-1105 (Plaintiff's Brief at pp. ID## 17-19 (docket no. 7)).

Similarly, the ALJ found that plaintiff did not meet all of the required elements of

Listing 12.05 C (AR 295). This listing applies to adults and provides in pertinent part:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

> *       *       *

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 CFR Pt. 404, Subpt. P, App. 1, Listing 12.05.

The ALJ explained his finding as follows:

> First, the legitimacy of the IQ scores in February 2005 (VIQ -71, PIQ - 67 and FSIQ - 66) are drawn into questioning since higher scores were attained in later WISC-IV testing in February 2008 (FSIQ - 73, VIQ - 73 and PIQ - 75). Moreover, even assuming that earlier scores are found valid, the record fails to establish existence of an "other" medical impairment imposing an additional and significant limitation of function. Even assuming that claimant's learning disorder is found to constitute an "other mental impairment," that impairment would not be expected to impose limitations significantly different from those resulting from the claimant's cognitive disorder.

> The regulation requires a special procedure in evaluating mental impairments (20 CFR 416.920a). If after specifying and documenting symptoms, signs and laboratory findings, I conclude that a medically determinable impairment exists, I must rate and record the resulting degree of functional limitation.

> The undersigned finds, based upon the objective evidence, that the claimant has "mild" limitations in her ability to engage in daily activities. In February 2009, the claimant testified she cleans, shops, puts the dishes in the dishwasher and babysits her niece. The claimant also testified she performs household chores. The claimant has "moderate" limitations in her ability to engage in social functioning. In April 2005, the claimant's mother reported the claimant got along well with

10

friends and adults (Exhibit 1E p. 16).  The claimant testified she gets along with her sister and goes to the library.  In addition, I am of the opinion that the claimant has "moderate" limitations in her ability to concentrate and complete tasks in a timely manner.  In March 2005, the claimant's mother reported the claimant could make change for $5.00, wrote letters and prepared meals.  The claimant testified she reads, uses the computer for e-mail and Facebook, and watches movies.  The claimant has had no documented episodes of decompensation.  She has had no psychiatric hospitalizations.  Finally, the evidence does not establish the presence of the "C" criteria of the Psychiatric Review Technique Form.

(AR 295-96).

### 2.    ALJ's failure to address inconsistency

In support of her claim, plaintiff contends that while the ME's testimony suggests that her functioning may have improved over time, the test results were relatively consistent and the ALJ "does not engage in any discussion as to which findings are more reliable."  Plaintiff's Brief at p. ID# 36 (docket no. 14).  "The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and determine a claimant's right to benefits under the Act." *Blair v. Commissioner of Social Security*, No. 98-3581, 1999 WL 196497, 2 (6th Cir. March 26, 1999), citing *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). *See generally, Wokojance v. Weinberger*, 513 F.2d 210, 212 (6th Cir. 1975) ("[i]t is for the [Commissioner] to resolve conflicts in the evidence").  Here, the ALJ did not resolve the conflict in the medical evidence with respect to plaintiff's IQ scores.  If the ALJ adopted the IQ scores from February 2005 (when plaintiff was 12 years old) then plaintiff would meet the first prong of Listings 12.05 C and 112.05 D.  On the other hand, if the ALJ adopted the IQ scores from February 2008 (when plaintiff was 15 years old), then plaintiff would not meet the first prong of these listings.  However, it is not for this Court to determine which IQ scores apply to plaintiff under the listings.  The ALJ has failed to resolve a conflict in the medical evidence which is vital to the determination of this action.  This Court does

not weigh the evidence or perform a *de novo* review of the evidence. *Brainard*, 889 F.2d at 681. Accordingly, the ALJ erred by failing to resolve this evidentiary conflict.

### b.   ALJ's prior finding of an additional impairment

Plaintiff also contends that the ALJ, without explanation, eliminated a prior finding that she suffered from both a cognitive impairment and a learning disability (AR 16).  Plaintiff's Brief at p. ID# 36.  In the August 25, 2008 decision, the ALJ found that plaintiff had two severe impairments: a cognitive impairment; and a learning disorder (AR 16).  In the October 25, 2011 decision, the ALJ found that plaintiff had only a severe impairment of a cognitive disorder based on the testimony of the ME, Ashir Kumar, M.D. (AR 288-89).  At the administrative hearing held on September 22, 2011, Dr. Kumar testified that, based on his experience, the documentary evidence, and the hearing testimony, plaintiff had a cognitive impairment "which was diagnosed in February of '05, supported by several IQ's ranging from 66, 73 and 73; and, a learning disability which was identified in December '07" (AR 484-85).  In this regard, Dr. Kumar noted that he was not a psychologist, but that he did "know that IQ's given different times can change" (AR 488).  By referring to an IQ test score of 66, Dr. Kumar's testimony appears to consider that score valid, and raises the question of whether plaintiff met the IQ range set forth in Listings 12.05 C and 112.05 D. If plaintiff met either of those listings, then the doctor's testimony that plaintiff had a learning disorder appears to establish another "mental impairment imposing an additional and significant work-related limitation of function."  *See* Listings 12.05 C and 112.05 D.

Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should resolve the inconsistencies in the medical evidence with respect to plaintiff's IQ scores, determine whether her IQ scores fall within

the 60 to 70 range for purposes of meeting the requirements of Listings 12.05 C and 112.05 D, and determine whether plaintiff suffers from an additional severe impairment under those two listings.

> ### B.   There is no substantial evidence to support the decision of the Commissioner that plaintiff is not markedly limited in two domains.

Plaintiff contends that the ALJ erred in finding that her condition as a child was not functionally equivalent to a listed impairment, i.e., that she was "markedly limited" in two domains. As an initial matter, plaintiff incorrectly states that "it is acknowledged that the claimant is at least markedly limited in the ability to acquire and use information." [3]   Plaintiff's Brief at p. ID# 39.   In addition, plaintiff contends that her "problems in focus, attention, concentration, and behavior" constitute "at least a marked finding of impairment in an additional area  . . .  of interacting or relating with others, or, attending and completing tasks. *Id.*  at pp. ID## 39-40.  Plaintiff's arguments are conclusory, and fail to address the regulations applicable to the domains.   *See* 20 C.F.R. § 416.926a (a) through (n) ("Functional equivalence for children").   "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to  . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems this argument waived.

---

[3] The Court notes that this fact was not acknowledged.  The term "markedly limited" is sometimes used interchangeably with the term "marked limitation" found in the regulations.  *See,* 20 CFR § 416.926a(e)(2)(i).  However, as discussed above, the ALJ found that plaintiff had a "less than marked" limitation in acquiring and using information (AR 290-91), i.e., that plaintiff's limitation was not as serious as a "marked limitation."

## IV.    Recommendation

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence-four of § 405(g).  On remand, the Commissioner should resolve the inconsistencies in the medical evidence with respect to plaintiff's IQ scores, determine whether her IQ scores fall within the 60 to 70 range for purposes of meeting the requirements of Listings 12.05 C and 112.05 D, and determine whether plaintiff suffers from an additional severe impairment under those two listings.

Dated:  July 6, 2015                                  /s/ Hugh W. Brenneman, Jr.
                                                     HUGH W. BRENNEMAN, JR.
                                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).